MERCANTILE TRUST CO. v. BALTIMORE & O. R. CO. et al.

(Circuit Court, D. Maryland. October 24, 1898.)

RAILROADS—INSOLVENCY AND RECEIVERS—DUTY OF COURTS TO EXPEDITE LITIGATION.

It is not the province of a court of equity to continuously operate a great railroad system; and where such a system is in its charge, and operated by its receivers, in a suit by creditors, it will not restrain other mortgage creditors, whose interest is in default, from commencing foreclosure proceedings pending the determination of other and collateral matters, where such action may probably have the effect of protracting the litigation and delaying a final disposition of the property, and where the rights of all the parties can be fully protected by any decree which may be entered.

This suit was brought by a judgment creditor to obtain a marshaling of assets and a sale of the property of the Baltimore & Ohio Railroad Company, an insolvent corporation. Receivers of the railroad company's property were appointed on February 29, 1896, and have since been in possession and operation of the road. The so-called "main stem" of the railroad is incumbered by three mortgages, and there are issues of first and second preferred stock and of common stock. Certain holders of the first preferred stock, including the state of Maryland and the Johns Hopkins University, intervened in the creditors' suit, by leave of court, and set up a claim to a lien upon the property superior to that of the mortgages. This claim was disallowed by the circuit court, and at this time is pending, undetermined, in the supreme court of the United States, having been brought there by certificate from the United States circuit court of appeals for the Fourth circuit.

On March 1, 1898, and May 1, 1898, semiannual installments of interest upon two of the mortgages upon the main stem became due, and default was made in their payment. On June 22, 1898, a plan and agreement for the reorganization of the railroad company were issued. Under this plan and agreement, more than 98 per cent. of the outstanding bonds, and more than 95 per cent. of the second preferred and common stocks, were deposited; and the holders thereof became parties to the agreement, prior to August 1, 1898, the time therein limited for receiving deposits of securities. On July 29, 1898, the intervening first preferred stockholders filed their petition, setting forth that their claim was still pending, undetermined, in the supreme court, and that their rights had not yet been ascertained, and asserting that the reorganization plan had been devised in the interest of the bondholders, and praying that the reorganization managers be restrained from consummating the reorganization until the rights of the petitioners should be finally determined. On August 1, 1898, the semiannual install-

ment of interest upon another mortgage upon the main stem became due, and default was also made in its payment. On September 17, 1898, the intervening stockholders filed their supplemental petition, alleging that the receivers of the railroad had funds in hand sufficient to pay the interest in default upon the three mortgages on the main stem, and praying that any declaration of the maturity of the principal of the debts secured by said mortgages, and any proceedings for the foreclosure thereof, be restrained. Upon this petition an order was made by Judge MORRIS, restraining the trustees under the mortgages from declaring the principal thereof due, and from proceeding to foreclose until the hearing upon the petition. On October 24, 1898, the intervening stockholders filed their "amendment and addition" to their supplemental petition, in which they alleged, in substance, that certain directors of the railroad company were improperly acting as members of the reorganization committee; and thereupon the trustees under the mortgages, alleging that the proceedings upon the last-mentioned petition would greatly delay the hearing and determination of all the petitions, asked to have the restraining order vacated.

Bernard Carter, Arthur George Brown, **and John J. Donaldson,** for first preferred stockholders.

Henry Crawford, for a common stockholder.

John G. Johnson and John N. Steele, for trustees under the mortgages.

Seward, Guthrie & Steele, for certain individuals who are named as reorganization managers.

Before GOFF, Circuit Judge, and MORRIS, District Judge.

MORRIS, District Judge (orally). I am asked by the Presiding Judge to announce the decision of the court, but, preliminary to that, I desire to recall the circumstances under which the restraining order was passed. At that time it seemed that the question which the court was called upon to decide was a narrow question. It was, in substance, whether or not the court, in the administration of this receivership, should direct that certain mortgage interest should be paid, in order to prevent a default,—a thing the court might do, irrespective of other claims upon the receivership funds. It is a discretion constantly exercised by courts, in the administration of receiverships of such properties as this, to make certain creditors wait, in order that time may be given to evolve some scheme of reorganization, or some method of payment, or that some expectation may be realized which may pay all the creditors; the court in the meantime paying only those creditors the nonpayment of whose claims would lead to a sale of the property. That question was a comparatively narrow one,—one that frequently arises in the administration of receiverships. A chancellor is always anxious that, pending the hearing of a question of that sort, no adverse action may be taken, and that the parties may be kept in statu quo; and for that reason it seemed to me at that time equitable that the restraining order should be passed, although I passed it against the protest of counsel representing the mortgagee, and notwithstanding their statement of the very great loss of interest which was occurring from day to day upon what we may well term enormous sums of money.

Now the question comes up before us in a somewhat different shape. It appears from the amended petition which has been filed this morn-

ing in this litigation that the questions which the court will be called upon to decide have taken a very much wider range, that answers will be required which will certainly take time to prepare, that testimony will have to be taken which probably cannot be completed within a month or more; so it does not seem possible that the case can be heard on the day which was fixed for the final hearing of these petitions. Now, it would be futile to undertake to hear one petition or two petitions, and dispose of them, and leave undecided the amended petition filed this morning, which may be of much more importance than any of the others. It therefore seems to us that we should rescind the restraining order, and not let it continue in the shape in which it was granted.

It is quite apparent that, some day or other, this property must, in some way or other, be gotten out of this court. It is not within the scope of a court of equity to continuously run a great railway system, such as this is. A sale, or a settlement with creditors, or a reorganization, it is certain, must come to pass in this case. Therefore it seems to us that it will not be doing more than the court should do towards aiding that final result, to allow the petitions of foreclosure to be filed. It was provided in the order that was passed that no such petitions should be filed, and no further proceedings for foreclosure taken, except upon special application to the court. Special application was made to the court subsequently, but believing then that the narrow question which was presented would remain the question to be decided, and could be shortly disposed of, I declined to give the leave that was asked; but it seems to me that, in view of the probably protracted nature of the controversy as now developed, the court should not prevent the filing of the foreclosure proceedings.

Now, this decision of the court does not mean at all that the petitioners are to be shut out from any rights that they may be able to establish. The final decree of foreclosure and the sale will be within the control of this court. In the other districts of this circuit the presiding judge will have control, and here we will sit together; so that it is a fact—and it is a fact upon which we now act—that the final terms of the foreclosure decree are within the control of this court, and the terms of that decree will be molded so as to do justice to all parties; and if it is necessary, to protect the rights of the present petitioners, to impose terms upon the purchaser, such terms can be put in the decree. For these reasons, we think it is proper that the restraining order should be modified, if not entirely rescinded. I think what I have said disposes of the matters now before us, unless Judge GOFF desires to add something to what I have said.

GOFF, Circuit Judge. Only that I suggest to counsel to now come to some understanding as to when this petition shall be answered and testimony taken, so that these matters can be disposed of. As to the motion to compel certain witnesses to answer the questions propounded before the examiner, it may be that the questions are not material under the first and second petitions, and yet proper under the third, and therefore it seems to me that the whole matter should be prepared for hearing. Now that counsel understand, from what

Judge MORRIS has stated, that the restraining order entered in the case, so far as it restrains the trustees of the mortgages of 1872 and 1874 and 1887 from declaring the default and proceeding for a decree of foreclosure, will be rescinded, an order may be drawn to that effect.

Mr. CARTER. May I inquire whether it sets aside the order restraining the trustees from declaring the principal due? The reason I ask this is that on the mortgage of 1887 the annual interest fell due on the 1st of August. I think there is a clause in that mortgage for a 90-day default, continued, authorizing a formal declaration forfeiting the property, the mortgage on which is not due for 90 years. Does your honor simply mean to allow an amendment or modification as to suing, and proceeding with the foreclosure suit, or do you also rescind the order restraining the trustees from making the 90-year principal due?

GOFF, Circuit Judge. The trustees have a right to so act under the mortgage itself.

Mr. JOHNSON. May I read your honors just three lines from the consolidated mortgage?

"If the party of the first part shall at any time hereafter make default, or refuse, neglect, or omit for any period exceeding 90 days, to pay the semi-annual interest on the consolidated mortgage bonds hereby secured, or any of them, or any part thereof, as it might become due, then the said party of the second part may, and, on the written request of the holders of one-fourth in amount of the said bonds then outstanding, shall, declare the whole principal sum thereof due and payable; whereupon the whole principal sum of each and all of said bonds then outstanding shall forthwith be due and payable, notwithstanding the time limited for the payment thereof may not then have elapsed; and such principal, as well as the arrears of interest thereon, shall bear interest at the rate per cent. per annum fixed in said bonds respectively, payable semiannually from the date of such default."

MORRIS, District Judge. We do not undertake now to determine any of the rights of the trustees under the mortgages.

Mr. CARTER. May it please the court, as the action of the court allows these foreclosure proceedings to go on, reserving the right to us to be heard when these matters come up for final decree, and molding, as your honor has said, any decree that may be passed, so as to preserve the rights of all, we think this will fairly protect our interests; but we respectfully submit, may it please the court, that there is no necessity of modifying the orders so far forth as this present matter of declaring the principal due is now concerned, because they have a right to foreclose for the nonpayment of interest, and therefore they can go on and perfect their foreclosure proceedings without delay, without being at liberty to declare the principal of the mortgage due. Of course, we are anxious now in no way to obstruct the view that the court has upon it, but we do think that that part of it is unnecessary for the proper progress of the case.

MORRIS, District Judge. In rescinding the order, it is not necessary for the court to indicate to the trustees what their course should be. If it appears hereafter that the trustees have acted in an im-

89 F.—39

provident manner, the court will declare that they have not acted under the mortgage, and then proceedings may be held invalid.

Mr. CRAWFORD. It makes a great deal of difference in the legal situation. Now, there is nothing due, at this time, except plain interest on that mortgage. On the 1st day of November, there may be formally a situation by which a tender of the past-due interest would not be sufficient, pending even this motion to pay interest.

GOFF, Circuit Judge. Does it really appear that it would be so?

Mr. CRAWFORD. Well, I do not think that there would be any question about it but what the situation would be at least substantially changed. Here is a motion to pay interest, without a declaration as to the principal, which may have to be met in the near future. Now, that part of the order will be maintained without any interference with the foreclosure, and, when the foreclosure sale occurs, it is sold both for principal and interest, but it makes a good deal of difference with regard to the question of tender.

MORRIS, District Judge. It seems impossible for us to deal with that question in advance. Of course, if the trustees improperly or improvidently declare the principal to be due because of default in payment of interest under the mortgages, it is within the power of the court to set their declaration aside. It has been done in other cases.