## Soaper, et al. v. King, et al.

(Decided November 30, 1915.)

### Appeal from Henderson Circuit Court.

1. Contracts—Construction of Mineral Lease.—An executory contract, whereby a landowner leased the oil, gas and mineral privileges of his land for a royalty of one-eighth of the profits to be derived from the oil, gas and minerals, but which did not require the lessee to develop the oil, gas and mineral privileges within any specific time, will not be specifically enforced, because it is unilateral and lacks mutuality of obligation.

2. Mines and Minerals—Construction and Operation of Lease.—Generally, leases of land for the exploration and development of oil, gas and minerals, are executed by the lessor in the hope and upon the condition, either express or implied, that the land shall be developed for oil, gas and minerals; and the lessee will not be permitted to continue to hold it any considerable length of

time without making any effort to develop it, according to the express or implied purposes of the lease.

3. Mines and Minerals—Construction and Operation of Lease.—After a delay of ten years by the lessees under a lease granting them the oil, gas and mineral privileges in land in consideration of a royalty only, without any attempt upon the part of the lessees to develop the oil, gas and mineral privileges, the lessors may annul the lease, without notice or demand.

JOHN C. WORSHAM for appellants.

MONTGOMERY MERRITT for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

This is an appeal from a judgment of the Henderson Circuit Court, which declared invalid and cancelled a lease of the mineral rights underlying the lands of the appellees.

The suit grew out of a contract dated June 5th, 1902, by which King and his associates, land owners in Henderson county, leased to Soaper and his associates the oil, gas, and mineral rights and privileges in 1,972 acres of land, with the exclusive right to sink or drill wells and shafts for the purpose of producing oil, gas, or any other mineral products that might be discovered or produced in or upon the land.

For purposes of brevity and convenience, the appellees, who were the plaintiffs below, will be called the lessors, and the appellants, the defendants below, will be referred to as the lessees.

The lease contained the usual provisions, giving the lessees the right of way over and across the lands, and to do such other work or acts thereon as might be necessary to a development of the oil, gas, and mineral rights and privileges therein conveyed.

The consideration of the lease was one dollar recited to have been paid, and the agreement of the lessees to pay the lessors one-eighth of all the net proceeds arising from the sale of oil, gas, or anything else of value that might be found or produced by the lessees in or upon said land. And the lease further recited that the said rights and exclusive privileges were granted in consideration that the lessees should begin, in good faith, to drill one or more wells on some part of the land, within two years from the date of the lease; and, upon their failure so to do, the lease should be void.

Within two years from the date of the lease the appellants drilled a well upon the leased premises to a depth of over 200 feet for the purpose of ascertaining whether any oil, gas, or minerals of value were underlying said lands. In this work they spent about $500.00, and found a vein of coal about five feet thick, lying about 200 feet below the surface. The lessees' work in the development of the land ceased, however, with the discovery of the coal vein above described. They did nothing thereafter.

On August 25th, 1914, King and his associate lessors brought this action against Soaper and the other lessees to cancel the lease for their failure to develop the land as required by the contract; and the circuit court having granted the relief asked, the defendant lessees prosecute this appeal.

The reason appellants give in their answer for their subsequent inactivity is, that about the time the coal was discovered in 1902, coal lands began and continued to advance rapidly in value, and that it was to the interest of the lessors, as well as the lessees, to delay the development of the lands so long as the coal in its natural state was rapidly enhancing in value. The defendants further alleged that in 1902 coal rights and coal underlying the surface, situated in territory contiguous to and adjoining the leased lands, had a low market value, not exceeding one dollar per acre; that the coal underlying the leased lands was so located with reference to the markets as to make it very profitable to both plaintiffs and defendants not to mine the coal at any time since the lease was executed, for the reason that its value in its natural state had increased from one dollar to ten dollars per acre, whereas the value of the coal, if mined, would be no greater now than it would have been at any time within the last ten or twelve years, or at any time since the lease was executed; that this appreciation in value enured proportionately to the advantage of the lessors and the lessees, and that the policy of the lessees in so holding said coal and mineral rights had, at all times prior to the bringing of this action on August 25th, 1914, met with the acquiescence and approval of the lessors. And they further alleged that at no time since the execution of the lease in 1902 had the lessors ever demanded or notified the lessees that the lessors desired or required that the coal and minerals underly-

ing the leased lands should be mined and developed; and, that if the lessors had made a demand or had given such a notice to the lessees, they could and would have developed said coal and minerals at any time a demand was made, or notice given to that effect.

The appellants rely upon the case of the Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky., 602, as sustaining their position that they had a right to desist from further developing the oil, gas, and mineral rights under the land, unless and until they were notified to so continue by the lessors, and that the lessors having failed to make any such demand, or to give any such notice, they had no right to have the lease cancelled.

In Monarch Oil, Gas & Coal Co. v. Richardson, *supra,* Richardson, the land owner, executed an oil, gas and mineral lease, in 1898, under which he was to receive a royalty of one-tenth of all the oil and minerals produced from the land, the lessee binding itself to begin prospecting within one year from the date of the lease, or in lieu thereof to pay an annual rental of $16.00. Richardson brought his action for a cancellation of the lease on the ground that the lessee had not developed the property. The answer alleged that, in lieu of development, the lessee had paid, and the lessor had accepted, the annual rental of $16.00 for seven years, and that the lessee was ready, able and willing to drill and develop the land whenever the lessor elected to require him to do so; but that he had never notified him to proceed with the development of the land, or that he would not accept the rental provided by the lease.

In declining to cancel the lease in that case, the court said:

"It is true, as said by counsel for appellant, that forfeitures are not generally favored by the law, but forfeitures which arise in gas and oil leases by reason of the neglect of the lessee to develop or operate the leased premises are rather favored because of the peculiar character of the product to be produced. Hence, it has been found necessary to guard the rights of the land owner as well as public interest by numerous covenants, some of the most stringent kind, to prevent their land from being burdened by unexecuted and profitless leases incompatible with the rights of alienation and the use of the land. Forfeiture for non-development or delay is essential to private and public interest in relation to the

use and alienation of property. Perhaps in no other business is prompt performance of contracts so essential to the rights of the parties, or delay by one party likely to prove so injurious to the other. Thornton on the Law Relating to Oil and Gas, section 148; Brown v. Vendergrift, 80 Pa., 142. This contract, however, can be so construed as to effectuate the intention of the parties in a manner that will do justice to the lessor as well as to the lessee without arbitrarily cancelling it, as was done by the judgment of the lower court, and this result may be accomplished by requiring the lessor to give notice to the lessee that he will not accept the annual rentals and permit his land to remain idle and undeveloped, but will require the lessee to execute the contract according to the intention of the minds of the parties at the time it was made by commencing in good faith its development, and, if the lessee does not, within a year from the notice, in good faith commence a well on the premises, the lessor, at the expiration of that time, may have the lease forfeited. The lessor in this contract did not at any time exact or demand of the lessee that it commence operating for oil or gas, but accepted the annual rentals paid in full discharge of the obligations of the contract, although at the end of any rental period he might have declined to accept rent and required the lessee to begin operations for oil and gas.''

The cases sustaining the ruling in the Richardson case are collected in the note in 11 L. R.A. (N. S.), 419.

Appellant insists that the rule above announced should be applied in this case. But the case at bar is radically different from the Richardson case. In the Richardson case the lease provided for a royalty of one-tenth of the profits to the lessor, or an annual rental of $16.00, in lieu thereof; and the rental was regularly paid and accepted as a satisfaction of the requirements of the lease. Under those facts the court held that if the lessors in that case preferred to require the lessees to develop the land instead of paying the annual rental, they had the right to do so upon giving a reasonable notice of their election. That ruling was entirely proper under the facts of that case. In the case at bar, however, the royalty is the only consideration for the lease, and nothing whatever has been paid to the lessors, either by way of royalty or otherwise. Under the lease in this case, it was optional with the lessees when, if ever, operations

under the lease should be carried to a stage that would yield a royalty to the lessors. They could wait fifty years before doing anything, after they had discovered the coal vein in 1902, and if the contract was a valid one, the lessors had no relief whatever. Such contracts have been held by this court to be unenforceable, on the ground that they are unilateral, and lack mutuality of obligation, which is essential to the validity of contracts.

In speaking of contracts of this character, in Berry v. Frisbie, 120 Ky., 343, we said:

"Such contracts lack the mutuality essential to their validity. A unilateral executory contract is in law a *nudum pactum*, and is unenforceable. Where it is left to one of the parties to an agreement to choose whether he will proceed or abandon it, neither can specifically enforce its execution in equity. (Litz v. Goosling, 93 Ky., 185, 14 Ky. Law Rep., 91, 19 S. W., 527, 21 L. R. A., 127; Federal Oil Co. v. Western Oil Co. (C, C. A.), 112 Fed., 373; Marble Co. v. Ripley, 10 Wall, 339, 19 L. Ed., 955). Nor is the recited consideration of $1.00 sufficient to uphold an action for the specific performance of a contract otherwise unsupported by consideration. As was said in Federal Oil Co. v. Western Oil Co., *supra,* 'The consideration would be so trifling, compared with the value of the leasehold interest, as to shock the moral sense.' "

Again, in the same case, we said:

"The purpose of these contracting parties must have been the finding of oil or gas in paying quantities on this land, if to be found, and their being worked so as to make money for each party. That was the point where their minds met. The owner of the soil could not have dreamt that he was putting it out of his power to ever develop or have developed the mineral possibilities of his farm; nor, if minerals were found, that it would be left to the exclusive discretion of the other party whether they would be brought into marketable condition. * * *

"Our construction of this contract is that when accepted, as it was, within four months of its date, it bound the lessees to, within two years from such acceptance, explore the land described by actually sinking a well, or wells, upon it. If oil or gas or coal were found therein in paying quantities, then the lessees were bound to diligently work and operate same so as to bring the product

**Soaper v. King.** **127**

to a present market, and so as to promptly yield to the lessor his royalty; and that, unless the lessees did so actually develop the land in question, and in good faith and diligence operate it, the lease should be deemed abandoned. (Parish Fork Oil Co. v. Bridewater Gas Co., 51 W. Va., 583, 42 S. E., 655, 59 L. R. A., 566.)''

See also to the same effect: Huggins v. Daley, 44 C. C. A., 12, 89 Fed., 606, 48 L. R. A., 320; Sharp v. Behr, 117 Fed., 872; Gadbury v. Ohio & I. Consol. Natural & Illuminating Gas Co., 162 Ind., 13, 62 L. R. A., 899; Berl v. Kehoe, 130 La., 1026; Loveland v. Long-henry, 145 Wis., 67, 140 Am. St. Rep., 1068; Mansfield Gas Co. v. Alexander, 97 Ark., 172; Howerton v. Kansas Natural Gas Co., 81 Kan., 560, 34 L. R. A. (N. S.), 44; Florence Oil & Ref. Co. v. Orman, 19 Colo. App., 88, 73 Pac., 628; Young v. McIlhenny, 116 S. W., 728; Eastern Kentucky M. & T. Co. v. Swan-Day Lumber Co., 148 Ky., 82; Killebrew v. Murray, 151 Ky., 345.

In the Swan-Day Lumber Co. case, *supra*, the court said:

"Generally, all leases of land for the exploration and development of minerals are executed by the lessor in the hope and upon the condition, either express or implied, that the land shall be developed for minerals; and it would be unjust and unreasonable, and contravene the nature and spirit of the lease, to allow the lessee to continue to hold under it any considerable length of time without making any effort at all to develop it according to the express or implied purpose of the lease.''

It will thus be seen that the case at bar does not come within the rule announced in the Richardson case; on the contrary, it is controlled by the Frisbie and similar cases, above cited.

The allegation in the amended answer relating to the acquiescence by the lessors in the lessees' delay in developing the land, is not sustained by the proof. There is an entire absence of proof upon the subject. It is not claimed, and there was no attempt to prove, any agreement between the parties upon that subject. The lessors did not notify the lessees to begin operations, and did not acquiesce in the lessees' delay in that respect; they merely did nothing.

The judgment of the court in cancelling the lease was right, and it is affirmed.