Iley B. BROWNING, Appellant,

v.

V. J. CAVANAUGH et al., Appellees.

Court of Appeals of Kentucky.

March 29, 1957.

Thomas L. Withers, Withers, Lisman & Withers, Dixon, for appellant.

John L. Dorsey, Sr., Dorsey & Dorsey, Henderson, for appellees.

STANLEY, Commissioner.

The question is whether an oil and gas lease of 170 acres executed by V. J. Cavanaugh and Lucile Cavanaugh, his wife, to Iley B. Browning on May 2, 1949, had terminated or been abandoned by him prior to March 24, 1956. The appeal is from a judgment declaring the Browning lease had terminated.

In 1951 Browning drilled an oil well (No. 1) of small production. In 1953 he drilled (No. 2) a dry hole. About 1,600 barrels of oil were produced from well No. 1. The lessors received $334 in royalties in 1952, $137 in 1953, and $92 in 1954. The cost of these two wells exceeded Browning's receipts by about $30,000. In December, 1954, Browning deepened well No. 1 about 200 feet to another sand in an effort to get better production. Failing to do so, he plugged the well and removed the casing and equipment in March, 1955. In August of that year, at Browning's request, the Cavanaughs executed an affidavit as to their ownership of the coal and other minerals in the tract and authorized Browning to drill any time he desired. Upon this affidavit and waiver Browning obtained a permit from the State Department of Mines and Minerals to drill on the tract underlaid with coal-bearing strata. KRS 353.060. The permit was for a period of four months. It expired December 29, 1955, without any development. During this period Browning had proceeded with drilling a test well on an adjoining tract near the boundary line which he regarded as an offset and as further testing the Cavanaugh lease.

Cavanaugh requested Browning's representative in the field to begin drilling on his land if he intended ever to do so to which the representative replied that he had been "busy with other wells and hadn't got around to doing so." On January 3, 1956, Cavanaugh wrote Browning that his lease had expired and that he was negotiating with another company for a lease. Browning replied that he had not abandoned the lease and that he had intended to drill the previous fall but "due to press of other business that kept our crews all busy we were unable to get around to doing so." He advised Cavanaugh that he expected to drill one or more wells on the tract before surrendering the lease. Cavanaugh again wrote insisting that Browning's lease had terminated.

In March, 1956, the Cavanaughs executed a lease of the tract to Clarence Wood for $2,000 cash consideration. Wood promptly began drilling and completed a well to the stage which showed that it would produce 40 or 50 barrels a day. Browning notified Wood he considered his lease still in effect and that Wood's operations on the premises were for his benefit. Thereupon, Wood capped the well until the ensuing litigation should end. There was evidence that wells on adjoining property, some only 200 or 300 feet from the boundary, had been producing oil and reducing the gas pressure in the area.

Thus, we have a case where the lessees had physically abandoned the development of the lease in March, 1955, which was ten months after the end of the fixed term, and had done nothing further although requested to continue or renew operations.

Questions of termination, abandonment and implied covenants are argued. It seems to us, however, that the question of the termination of the lease is decisive, although abandonment enters into it.

The lease is known as and styled, "Kentucky Form, Oil and Gas Lease, Producers 88 Sp. T.O.P. Rev." The lease is dated May 2, 1949, and was "for a term of five years from this date and as long thereafter as oil, gas * * * or any of them is produced from said leased premises or operations for drilling are continued as hereinafter provided * * *." The several "hereinafter" provisions relating to the commencement of a well and other specified activities are immaterial in this case except the interpretation of the phrase "or operations for drilling are continued." The essential defense of the lessee is that there was only temporary cessation of development and that "operations for drilling" had been continued by the drilling of what would be an offset well on the adjoining tract, which drilling was regarded as a test of this lease.

■■■ The initial fixed term clause of a lease dominates the period for which the lease shall run. The period is not to be extended by "indirect, ambiguous and negative language in the development clause," for oil and gas leases in case of ambiguity with respect to development are construed to be for the benefit of the lessor and against the lessee. Fagan Co. v. Burns, 247 Mich. 674, 226 N.W. 653, 67 A.L.R. 522; Kelley v. Hardwick, 228 Ky. 349, 14 S.W.2d 1098. So it is that under a lease of this type the lessee's estate or rights automatically terminate upon the expiration of the specified time where there has been a failure of the lessee to keep its terms or unless the conditional provisions have been or are being performed or there has been an extension of the lease by a supplementary, valid agreement or material interference by the lessor or by operation of law. Willis, Thornton, Law of Oil and Gas, §§ 224, 383; 58 C.J.S., Mines and Minerals,

§§ 199, 202(2); 24 Am.Jur., Gas and Oil, § 77.

On authority of Western States Oil & Land Co. v. Helms, 143 Okl. 206, 288 P. 964, 969, 72 A.L.R. 357, Thornton says, "[A] lessee may not continue exploration after the expiration of the initial term and exhaustion of the oil and gas discovered during the initial term."

■■■ As indicated above, the question of abandonment of the lease enters into the decision of the case only in a limited or qualified sense. Abandonment of a mineral lease consists of surrender of the property, coupled with an intention to relinquish the lease and is, in fact, to be determined in each case upon the surrounding facts and circumstances. Justice v. Burgess, 244 Ky. 774, 52 S.W.2d 720. The application in this case is in the conduct and inactivity of the lessee which indicate very persuasively that he went off and left the property. Certainly his conduct shows that "operations for drilling" were not being continued.

■■■ We think the term "operations for drilling" at least required the performance of some act on the leased premises—not on adjoining premises—which tended to complete a well already commenced. We accept as correct the appellee's definition and understanding of the provisions of the lease, namely: "The lease under consideration began on May 2, 1949, and continued for five years and so long thereafter as oil was produced from the leased premises. However, if, at the expiration of the above fixed term of the lease the lessee was engaged in drilling an additional well and the lessee continued to drill with reasonable diligence and dispatch, then the lease remained in force until the completion of such well, and if it was determined that the completed well would produce in paying quantities, then the lease continued as if the well had been completed within the primary term of the lease."

In Pratt v. Hays, 190 Ky. 20, 226 S.W. 362, the lease provided, " 'If after opera-

tions are begun on this lease they shall discontinue for 60 consecutive days, this lease is null and void.'" Within the initial period the lessee drilled a dry hole and then left the premises. He had done nothing for twelve months before suit was filed by the lessor to cancel the lease. The lessee insisted that the reasonable construction of the lease was that he had reasonable time in which to drill another well. The court regarded the lessee's acts as a clear violation of the terms of the lease, defining "operations" as meaning the drilling of a well, and saying "when Pratt ceased to drill or otherwise explore the premises for oil or gas and moved the machine away from the premises, he came clearly within the terms of the forfeiture clause at the end of the 60-day period; and this was so even though he had theretofore drilled a dry hole on the lease and left the casing in it." While the present case is to be determined by the expiration of the initial term of the lease rather than any forfeiture provision, the reasoning of the Pratt case is applicable.

In Ison v. Edra Lee Oil & Gas Co., 241 Ky. 754, 45 S.W.2d 3, the lease was for a period of five years and as long thereafter as oil and gas should continue to be found in paying quantities or rents and royalties were paid. The lessees held the property for about six years. During the first year they had drilled a well, which was a very small producer, and then made no effort to develop the lease further. We held that the lease had expired and the lessees' rights had ended except that they should have set apart such acreage around the small producing well as might be needed to operate it and market the oil.

Soaper v. King, 167 Ky. 121, 180 S.W. 46, is a case relating to the cancellation of a lease. The lessees had encountered a vein of coal in drilling a test well and then ceased operations. They did nothing further on the lease for several years. They sought to justify their cessation of operations because they believed it was to the mutual advantage of the lessor and lessee to delay development since the value of the coal was rapidly increasing. In holding that the lessor was entitled to have the lease cancelled as abandoned, the opinion quotes the following from Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S.W. 438, 442, 46 L.R.A.,N.S., 672, which is equally pertinent to the present case:

"'Generally, all leases of land for the exploration and development of minerals are executed by the lessor in the hope and upon the condition, either express or implied, that the land shall be developed for minerals; and it would be unjust and unreasonable, and contravene the nature and spirit of the lease, to allow the lessee to continue to hold under it any considerable length of time without making any effort at all to develop it according to the express or implied purpose of the lease.'"

The lessee, Browning, may have regarded the cessation of development of the Cavanaugh lease as temporary and, doubtless, in his own mind felt justified in postponing a return and commencement of another well on the property until the well he was drilling on the adjoining lease was completed. But manifestly "operations for drilling" on the Cavanaugh lease did not mean drilling on other property. We must determine the rights of the parties by the contract they made.

We are of opinion, therefore, that the judgment is correct and it is

Affirmed.