**WHEELER AND LEMASTER OIL AND GAS COMPANY et al., Appellants,**

**v.**

**Jack HENLEY et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 22, 1965.

Rehearing Denied Feb. 18, 1966.

J. K. Wells, Paintsville, for appellants.

W. Howes Meade, Paintsville, for appellee Jack Henley.

W. A. Johnson, Paintsville, for appellees Mary Evelyn Howes Johnson and others.

WILLIAMS, Judge.

This is a suit to quiet title brought by the owners of the working interests of an oil and gas lease on property located in Johnson County. The case was submitted solely upon the issue of whether the oil and gas lease dated July 8, 1922, and subsequent assignments thereof, had been "abandoned or was still in effect" at the filing of this action. The trial judge found that the lease had been abandoned and the lessees have appealed from that judgment.

The original lease from which appellants have derived their interest was entered into on July 8, 1922. The terms of the lease provided that it would remain in force for a term of five years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee. Summers, in his treatise on Oil and Gas, refers to this condition as a "thereafter" clause. Summers, Oil and Gas (1959), section 305, p. 321.

Thirteen wells were drilled on the leasehold in the first five years. Through the years, production declined to the point that only 90.28 barrels were produced in 1960, and up to April 8, 1961, *when production ceased,* only 19.52 additional barrels had been produced. After almost 12 months of non-production, the appellants began pumping again for four or five days. That was the only pumping done up to the time of this lawsuit (October 19, 1963).

During this period appellants made several unsuccessful efforts in attempting to find a buyer for the lease who was financially able to resume production by a secondary or "water flood" recovery. The secondary method of production had become essential since primary recovery methods were no longer economically feasible. In August 1963, the lessors executed a "top lease" to appellee Henley, and this lawsuit resulted.

■ In Cameron v. LeBow, Ky., 338 S. W.2d 399, 406, we specifically enumerated

"two distinct and different grounds upon which a lessee of an oil and gas lease, or an assignee, may lose his interest. One is by *forfeiture* for breach of an express or an implied covenant or obligation. The other is by *abandonment."* Either of these two grounds is applicable in some cases, especially where the primary term has not expired. However, in the instant case, the primary term has expired and appellants have retained their leasehold interest by producing oil from the property.

■ In addition to the two grounds listed in Cameron v. LeBow, supra, there is, of course, a third ground by which a lessee of an oil lease may lose his interest; a case where the lease expires pursuant to its own terms. After the primary term has run, "if production ceases, the lease is at an end, although a temporary cessation of production does not terminate the lease." Summers, Oil and Gas, supra, at pages 323, 324. This Court has qualified the above rule in Lamb v. Vansyckle, 205 Ky. 597, 266 S.W. 253, 254, by stating:

"* * * nor are we willing to adopt the rule that a lease which is to continue for a definite period, and so long as oil or gas is produced in paying quantities, ipso facto terminates whenever production or development ceases for a brief period of time. On the contrary, we have reached the conclusion that the only fair and just rule is to hold that the lease continues in force unless the period of cessation, viewed in the light of all the circumstances, is for an unreasonable time. * * *"

Oklahoma adopted this rule as announced in Lamb v. Vansyckle, supra, considering it to be the soundest and most equitable, in Cotner v. Warren, Okl., 330 P.2d 217 (1958).

In Gasaway v. Pendergrass, Ky., 350 S. W.2d 460, 463, the real issue was antici-

pated. " * * * Had the well been a producer, thus keeping the lease in force, and had thereafter declined to a point at which waterflooding was resorted to as a secondary recovery method, we should then have been faced with the question of how long a lessee's unsuccessful experiments can keep a lease alive in the absence of production; * * *."

 The issue of what is an unreasonable time must be determined by the facts and circumstances surrounding each case. Here, non-production has related back for a period of two years and four months, except for four days of token pumping which resulted in only a negligible amount of oil being produced which was never sold, and no oil has been sold since February 1, 1961. The record likewise indicates that the lessors had not received any royalty payments in the previous ten years. We take notice of the fact that it was no longer profitable to operate the lease by primary recovery methods, and it had become necessary to "water flood" the lease. We understand that a lessee can't be expected to find a buyer overnight who is financially able to assume an expensive project such as "water flooding." However, since the wells had not been producing profitably for at least a period of ten years, appellants should have been aware of the problem, and they had more than a sufficient opportunity to finance the project or find a buyer who could do so. This is especially true in light of the fact that the "water flooding" method was proving to be so successful on property surrounding the leasehold in question. Also, appellants refused two offers to have the lease "water flooded."

In view of the above circumstances, we conclude that the delay in production of over two years was sufficiently unreasonable to terminate the lease under the provisions of the habendum clause of the lease. This Court recognizes a strong policy against a lessee holding land for an unreasonable length of time simply for

speculative purposes, or because of a lack of due diligence, where the lessor's only revenue results from royalty payments received from continued production.

The judgment is affirmed.