951 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DELTA GAS CORPORATION, C. Lester Paul and Margaret S. Paul,
Defendants-Appellants,
v.
Grover THOMPSON and Violet Thompson, Plaintiffs-Appellees.
 No. 90-6486.
 United States Court of Appeals, Sixth Circuit.
 Dec. 3, 1991.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 This case involves the construction of an oil and gas lease executed by the plaintiffs, Grover and Violet Thompson, as lessors. Defendants, Delta Gas Corporation, C. Lester Paul, and Margaret S. Paul (hereinafter collectively referred to as "Delta"), became lessees under the lease through assignment. The plaintiffs instituted this action in an effort to terminate the oil and gas lease covering their property situated in Kentucky, and Delta removed plaintiffs' state action to the bankruptcy court where Delta's plan for reorganization was pending. Subsequent to both parties filing motions for summary judgment, the bankruptcy court denied Delta's motion and granted summary judgment to plaintiffs. The district court affirmed. Delta appeals the district court's affirmance of the grant of summary judgment, arguing (1) that the bankruptcy court entered summary judgment sua sponte without affording Delta advance notice and a reasonable opportunity to be heard on all issues considered by the bankruptcy court, and (2) that the bankruptcy court erred in finding that there were no material issues of fact. For the reasons set forth below, we affirm.
 
 I.
 
 2
 The relevant facts are not in dispute. On January 1, 1972, plaintiffs' predecessor in interest, Belle Thompson, leased property to Louis Pineur, Delta's predecessor in interest. The terms of the lease are set forth in a standard printed form known as "Kentucky Form Oil and Gas Lease, Producers 88 SP TOP REV," which provides in pertinent part as follows:
 
 
 3
 It is agreed that this lease shall remain in force for a term of three (3) years from this date and as long thereafter as oil, gas, casing-head gas, casing-head gasoline or any of them is produced from said leased premises or operations for drilling are continued as hereinafter provided, or operations are continued for the injection of water, brine and other fluids into subsurface strata....
 
 
 4
 (App. 110).
 
 
 5
 Two producing wells had already been drilled on the property at the time the lease was entered into. One additional producing well was drilled during the period from 1972 to 1975, the initial three-year term of the lease (commonly referred to as the "primary term"). In 1973, Louis Pineur assigned his interest under the lease to Dalmock Development Corporation (Dalmock). The primary term of the lease expired on January 1, 1975.
 
 
 6
 In early 1979, Delta bought an option from Dalmock, Crafted Interiors, Inc., and Joeun, Inc., to purchase 28 oil and gas leasehold estates and the equipment thereon, including the leasehold estate on plaintiffs' property. According to Delta, it planned to join the gas produced from each separate leasehold into one pipeline for transmission and sale to a single buyer. Delta exercised its option in late 1979 and actually took possession of the land in 1980. Two property owners other than plaintiffs filed lawsuits in 1980 contesting the validity of Delta's leasehold interest in gas and oil on their property, but plaintiffs, at that time, did not contest the validity of their lease.
 
 
 7
 Delta made some necessary repairs to the existing gas transmission line and was prepared to begin producing gas when the market collapsed, causing its main purchaser, Columbia Gas Transmission Corporation (Columbia), to refuse to fulfill its contractual obligation to purchase gas from Delta. According to the affidavit of C. Lester Paul, president and chairman of the board of Delta, Columbia's breach of contract arose from "failures to buy the volume of gas [Columbia] agreed to and failure to pay the agreed high price for such gas [Columbia] purchased." (App. 54).
 
 
 8
 In 1984, shortly after Columbia breached its contract, Delta sought protection under Chapter 11 of the Bankruptcy Code pursuant to the advice of Delta's counsel. According to Paul's affidavit, Chapter 11 reorganization was advised as a more expeditious means of severing the contract than trying to "extract an abandonment from Columbia" by going to the Federal Energy Regulatory Commission (FERC) pursuant to 18 C.F.R. § 157.30. (App. 55). The bankruptcy court, in May 1985, ordered Delta's contracts with Columbia rejected so that Delta could sell the gas to other purchasers. Nevertheless, Paul's affidavit explains the effect of such order as follows:
 
 
 9
 Unfortunately, counsel was incorrect in his appraisal of the extent of such order. Approximately one and one-half years later, after many negotiations, it became apparent that Delta and myself would have to obtain an Order of Abandonment and a Blanket Small Producers Certificate to commence sales of natural gas to any other of the several willing buyers developed during this period by myself. That abandonment order and Certificate of Authority to sell gas was not granted Delta and myself until November, 1988....
 
 
 10
 (App. 55).
 
 
 11
 Until 1985, the three wells on plaintiffs' property were in production, and plaintiffs received royalty payments from that production. Oil and gas production on plaintiffs' property ceased in August 1985, and no production, drilling, or other development of the leasehold has occurred since then, except to the extent that plaintiffs' son has used gas from one well for household purposes. Payment of rent ceased in October 1985, and no rental or royalty payments have been made to the Thompsons since then.
 
 
 12
 Due to the lack of production on several of the 28 leasehold estates belonging to Delta, litigation commenced over the continued validity of those leases, which litigation included the underlying action. Following discovery, plaintiffs filed a motion for summary judgment and noted in their brief in support of the motion that, in order to invalidate Delta's interest in the leasehold estate, they must demonstrate that the lease has either been forfeited, abandoned, or has automatically expired according to its own terms. Plaintiffs then proceeded to argue that Delta had abandoned the lease as a matter of law. Delta responded that it had not abandoned the oil and gas lease and sought summary judgment in its favor. After taking the motions under advisement, the bankruptcy court issued a memorandum opinion wherein it noted that Kentucky law places upon the party asserting abandonment the burden of proving that the lessee intended to relinquish the lease.[1] Finding that the issue of Delta's intent to relinquish control of the lease was in dispute, the bankruptcy court declined to award summary judgment to plaintiffs on the grounds of abandonment. However, the bankruptcy court went on to hold that it "sua sponte considered the other two ways a lease can terminate and concludes that the plaintiffs' summary judgment motion must be sustained since the lease in question has expired by its own terms." (App. 106). The court found that the lease "unquestioningly expired in 1985 when the production of gas ceased and the defendants took no further action to develop the leasehold." (App. 107).
 
 
 13
 Delta appealed the judgment of the bankruptcy court to the district court, arguing that the bankruptcy court sua sponte granted summary judgment to plaintiffs on a basis that was not presented in plaintiffs' motion and not fully developed in the record or briefed by the parties. Consequently, argued Delta, it was not given advance notice of and an opportunity to present evidence and argument on, the question whether the lease expired on its own terms. Delta asked the district court to reverse the sua sponte grant of summary judgment and remand the matter for consideration following further development of the record by the parties. Alternatively, Delta claimed that, on the question whether the lease had expired on its own terms, there were genuine issues of material fact and asked that the summary judgment be reversed. The district court affirmed the bankruptcy court, and Delta subsequently filed the instant appeal, which relies on the same arguments made before the district court.
 
 II.
 
 14
 Before addressing Delta's claim that the award of summary judgment was entered prematurely, we address first the contention that genuine issues of material fact exist on the question whether the lease had expired on its own terms.
 
 
 15
 We review a grant of summary judgment de novo. Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). Summary judgment is appropriate where no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court determines whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Of course, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).
 
 
 16
 The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record demonstrating the absence of a material issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Potters Medical Center v. City Hosp. Ass'n, 800 F.2d 568, 572 (6th Cir.1986). The non-moving party must then go beyond the pleadings and come forward with specific facts showing that there is a genuine issue of material fact. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his or her claim, summary judgment is appropriate. Fed.R.Civ.P. 56(e).
 
 
 17
 According to the terms of the lease between Delta and the Thompsons, they shall remain in effect for three years and "as long thereafter as" oil and gas are produced from the leased premises, operations for drilling are performed, or operations are continued for the injection of fluids into subsurface strata. It is undisputed that the primary three-year term of the lease expired on January 1, 1975, and Delta makes no argument that it ever conducted operations for the subsurface injection of fluids. Therefore, when faced with the argument that the lease has expired according to its own terms, the question presented is whether "oil, gas, ... or any of them [were] produced from said leased premises or operations for drilling" have continued since the expiration of the primary term or, more particularly, since 1985.
 
 
 18
 Delta makes no claim that it has ever conducted operations for drilling on any of the 28 leaseholds acquired in 1980. Although Delta claims that it repaired and restored gas transmission lines on various portions of its 28 leaseholds, we do not believe this constitutes sufficient development of the leaseholds in order to continue the lease under the term "operations for drilling." When construing in another case the same "Producers 88" lease form to determine whether a lease had expired according to its own terms, the Kentucky Court of appeals stated as follows:
 
 
 19
 The initial fixed term clause of a lease dominates the period for which the lease shall run. The period is not to be extended by "indirect, ambiguous and negative language in the development clause," for oil and gas leases in case of ambiguity with respect to development are construed to be for the benefit of the lessor and against the lessee. So it is that under a lease of this type the lessee's estate or rights automatically terminate upon the expiration of the specified time where there has been a failure of the lessee to keep its terms....
 
 
 20
 Browning v. Cavanaugh, 300 S.W.2d 580, 582 (Ky.1957) (citations omitted). The term "operations" within the context of an oil and gas lease has been interpreted by Kentucky courts to mean "the drilling of a well." Id. at 583 (citing Pratt v. Hays, 190 Ky. 20, 226 S.W. 362 (Ky.App.1920). Further, there is no indication that the repairs to portions of the transmission line serving the 28 leaseholds included repairs on the premises leased from the Thompsons. "We think that the term 'operations for drilling' at least required the performance of some act on the leased premises--not on adjoining premises--which tended to complete a well already commenced." Browning, 300 S.W.2d at 582.
 
 
 21
 With respect to the production of oil or gas on plaintiffs' property, there is no dispute that production, and the attendant royalty payments to plaintiffs, ceased in 1985 and had not resumed at the time plaintiffs filed their action in January 1988.[2] "After the primary term has run, 'if production ceases, the lease is at an end, although a temporary cessation of production does not terminate the lease.' " Wheeler and LeMaster Oil & Gas Co. v. Henley, 398 S.W.2d 475, 476 (Ky.1965) (citing Summers, Oil and Gas § 305, pp. 323-24 (1959)). Although "a brief" cessation of production or development would not necessarily operate to terminate a lease, a cessation "for an unreasonable time" does terminate the lease. Wheeler, 398 S.W.2d at 476 (quoting Lamb v. Vansyckle, 205 Ky. 597, 266 S.W. 253, 254 (Ky.1924)).
 
 
 22
 "The issue of what is an unreasonable time must be determined by the facts and circumstances surrounding each case." Wheeler, 398 S.W.2d at 477. In Wheeler, a nonproduction period of two years and four months following the expiration of the primary term was found sufficiently unreasonable to terminate an oil and gas lease under a clause providing that the lease would remain in force as long after the primary term as oil and gas were produced by the lessee. Id. The court took notice of the fact that the lessee had difficulty in finding a buyer for oil that could help finance the lessee's operations, but found that, where the lessee "should have been aware of the problem" and "had more than a sufficient opportunity" to act on it, a delay of two years and four months, caused "simply for speculative purposes, or because of a lack of due diligence," was unreasonable. Id.
 
 
 23
 Here, the only reasons proffered by Delta to excuse the two and one-half year period of nonproduction are the twin allegations that Columbia breached its purchase contract with Delta in 1984 and that Delta could not find a buyer to replace Columbia until FERC, in November 1988, issued an order cancelling the dedication to Columbia of the sale of natural gas produced on the 28 leaseholds. However, it is undisputed that Delta was aware, at least by 1984, that its contractual disputes with Columbia could threaten Delta's operations. Delta makes the claim that its Chapter 11 petition was filed in 1984 in the hope that a bankruptcy court order severing Delta's contracts with Columbia would resolve the contract dispute by allowing Delta to obtain another buyer on terms more favorable to Delta. Assuming that the FERC order was the cause of the production delay, as Delta asserts, the only reason submitted by Delta for its failure to obtain an order of cancellation earlier than 1988--the only circumstance by which the bankruptcy court could measure the reasonableness of the nonproduction period--is that Delta's legal counsel did not realize the need for such an order until one and one-half years after the bankruptcy court entered the order allowing Delta to reject the Columbia contracts. We find this fact insufficient to create a genuine issue of material fact on the question whether the nonproduction period was unreasonable in light of the circumstances, when Delta was aware of the problem before production ceased, had sufficient opportunity to act on it before plaintiffs instituted their suit, but, instead, failed to exercise due diligence.
 
 
 24
 Accordingly, we find that the bankruptcy court did not err by granting summary judgment to plaintiffs on the basis that the lease had expired by its own terms.
 
 III.
 
 25
 We now address Delta's contention that summary judgment was considered prematurely by the bankruptcy court. We disagree with Delta's contention that the bankruptcy court granted summary judgment sua sponte, notwithstanding that the bankruptcy judge used that term. Summary judgment was entered by the district court, not on its own motion, but on the plaintiffs' motion. Nevertheless, whether summary judgment is granted sua sponte or prompted by the motion of either party, the requirement to give notice and allow a reasonable opportunity to respond to the issues considered by the court is the same. Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir.1989). The trial court must "afford the party against whom summary judgment will be entered advance notice as required by Rule 56 and an adequate opportunity to show why summary judgment should not be granted."[3] Kistner v. Califano, 579 F.2d 1004, 1006 (6th Cir.1978).
 
 
 26
 Delta does not argue that the court granted summary judgment before the expiration of the ten-day period required by Rule 56(c). Rather, Delta contends it was denied the opportunity to present evidence and argument on the question of whether the lease expired on its own terms, because that ground for summary judgment had not been raised in plaintiffs' motion and the record on that issue had not been fully developed. Delta argues that plaintiffs indicated they were relying only upon the theory of abandonment. However, plaintiffs' motion enumerated the three legal theories relating to the termination of oil and gas leases as follows:
 
 
 27
 The first way a lessee can lose a lease is by forfeiture for breach of an expressed or an implied covenant to develop the lease. Second, is by abandonment i.e. intentional relinquishment of a known right. Third, where a lease expires pursuant to its own terms. After the primary term has run if production ceases then the lease is at an end.
 
 
 28
 (App. 11-12).
 
 
 29
 Although plaintiffs proceeded to place their emphasis on the theory of abandonment, and the bankruptcy court declined to grant summary judgment on that basis, the court nevertheless decided the motion on the basis of a legal theory presented by plaintiffs. Moreover, in support of their motion, plaintiffs cited two Kentucky cases that, after enumerating the three ways that lessees can lose their interest in an oil and gas lease, proceeded to find that the leases at issue had expired pursuant to their own terms due to the cessation of production and development on the leasehold property. Browning, 300 S.W.2d at 582-83; Wheeler, 398 S.W.2d at 476-77. The crux of plaintiffs' argument was that the lease was invalid because no production on or development of the leasehold had occurred since August 1985. In its response to plaintiffs' motion, Delta itself cited Wheeler, which held that "[a]fter the primary term has run, 'if production ceases, the lease is at an end, although a temporary cessation of production does not terminate the lease.' " Wheeler, 398 S.W.2d at 476. Delta also addressed plaintiffs' reliance upon Browning and cited Browning's discussion of the abandonment theory. Yet, Browning held that although "the question of abandonment of the lease enters into the decision," the decisive question in the case before the court was whether the lease had expired according to its own terms due to this cessation of development by the lessee. Browning, 300 S.W.2d at 582-83. We cannot perceive how Delta was surprised by the legal basis relied upon for summary judgment, or denied an adequate opportunity to respond to it, when plaintiffs raised the same legal theory in their motion for summary judgment and Delta responded to plaintiffs' motion, in part, by addressing cases decided according to that theory.
 
 
 30
 Further, where Kentucky cases have acknowledged the overlapping nature of the various legal theories for terminating oil and gas leases and the confusion among Kentucky courts when applying those theories, see Cameron v. LeBow, 338 S.W.2d 399 (Ky.1960), and Browning, 300 S.W.2d 580, Delta's claim that it was surprised by the legal theory ultimately relied on by the bankruptcy court lacks credibility and fails to absolve Delta of its burden of coming forward with specific facts showing that there is a genuine issue of material fact. Although Delta claims that the record had not been fully developed with respect to the question whether the lease had expired on its own terms, it acknowledges that plaintiffs' motion for summary judgment was filed following discovery. Delta, even at oral argument, did not indicate what additional evidence is needed before deciding plaintiffs' motion, nor did Delta demonstrate how the opportunity to submit additional material would have any effect on the court's analysis.[4] Accordingly, "it would be a useless procedure to reverse" the bankruptcy court in order to allow Delta another opportunity "to respond to a summary judgment motion if only a substantive law question is involved." See Nuclear Transport & Storage, Inc. v. United States, 890 F.2d 1348, 1351 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1807 (1990). We therefore hold that the bankruptcy court did not commit reversible error in granting summary judgment.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 To constitute abandonment, the lessee must both intend to abandon and actually relinquish the leased premises. Browning v. Cavanaugh, 300 S.W.2d 580 (Ky.1957); Fuqua v. Chester Oil Co., 246 S.W.2d 1007, 1008 (Ky.1952)
 
 
 [2]
 Defendants maintain that production did not cease if one considers the household use of gas by plaintiffs' son. However, it is not disputed that no gas was produced for sale. Production, as defined under the terms of the lease, does not include production for household use by the lessors, as the lease expressly provides for such use and no profit was generated by such production. See Cumberland Contracting Co. v. Coffey, 405 S.W.2d 553 (Ky.1966) (production in profitable quantities is required, as the payment of a reasonable royalty is the object of leasing oil and gas rights)
 
 
 [3]
 Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing."
 
 
 [4]
 Delta argues that the record was not fully developed on the issue whether plaintiffs demanded any production from Delta or otherwise gave notice that additional production was necessary to prevent the lease from being terminated. However, notice is relevant only to one of the three grounds upon which a lessee of oil and gas may lose its interest: termination based on the theory of forfeiture for breach of an express or implied covenant or obligation. Forfeiture for nondevelopment or a delay in development requires that the one claiming forfeiture shall have first placed the other party on notice that a forfeiture will be demanded if development is not carried out. Carrs Ford Corp. v. Kodak Min. Co., 809 S.W.2d 699, 702 (Ky.1991); Cameron v. Lebow, 338 S.W.2d 399, 402 (Ky.1960); Wheeler, 398 S.W.2d at 476