HIROC PROGRAMS, INC., for itself and as Managing General Partner for Delstar Gas Development Program No. 931, LTD. and Delstar Gas Systems, Inc.; C. Lester Paul and Margaret S. Paul; Timothy C. Paul; Michael W. Paul; The Hiroc Group Inc.;

Delta Gas Corporation, d/b/a Delta Programs Inc.; Mitee Enterprises (a partnership); Mitee Enterprises, Inc.; Viking Producers, Inc.; Viking Petroleum Properties; Kaintuk Petro Producers, Inc.; Bluegrass Drilling Corporation; Shale Gas Transmission Corp.; Northstar Gas Systems, Inc.; and Buddy Bear Enterprises, Inc. (The Paul Entities) Appellants,

v.

Wilhelmina Cullen ROBERTSON; the Estate of Corbin J. Robertson, Sr., acting through its Administrator, Wilhelmina Cullen Robertson; Wilhelmina Robertson Morian and her husband Reed Morian; Alsion Robertson Baumann and her husband Peter Baumann; Carroll Robertson Hochner; Lillie T. Robertson; The 1991 Management Trust for Corbin J. Robertson III, Corbin J. Robertson, Jr. as Trustee; The 1992 Management Trust for Francis Christine Robertson, Corbin J. Robertson Jr., as Trustee; and William Keen Robertson, Minor, Corbin J. Robertson Jr. as Custodian (The Robertson Family) Appellees.

No. 1998–CA–002130–MR.

Court of Appeals of Kentucky.

May 5, 2000.

Rehearing Denied June 30, 2000.

Discretionary Review Denied April 18, 2001.

Steven D. Combs, J. Scott Kreutzer, Combs & Combs, PSC, Pikeville, for Appellant.

C. Thomas Ezzell, Getty, Keyser & Mayo, LLP, Lexington, for Appellee.

Before: BARBER, HUDDLESTON and JOHNSON, Judges.

## OPINION

HUDDLESTON, Judge.

This is an appeal from a Lawrence Circuit Court judgment that adopted a special

master commissioner's proposed findings of fact and conclusions of law[1] and awarded the appellees, the Robertson Family, unpaid royalties owed pursuant to an oil and gas lease and damages for the conversion of gas after the lease had terminated. We affirm in part, reverse in part and remand with directions to recalculate damages.

In November 1930, the Lightfoot Land Company granted an oil and gas lease, known as the Lightfoot lease, to E.J. Evans. According to the lease, Evans agreed to start and diligently prosecute the drilling of a well within sixty days. If the well was dry, Evans could elect within the next twelve months to continue leasing the property and drill another well. If he chose to continue leasing the property, he was required to pay rent at a rate of $1.00 per acre per annum, payable quarterly, for an additional four years. In the event that oil or gas was produced in paying quantities, the annual rent was to be reduced and the Lightfoot Land Company would be entitled to royalty payments. If gas was produced in paying quantities, the lease was to be extended for "as long as oil and gas is marketed from the property hereby leased."

On April 8, 1994, the successors-in-interest to Evans, Hiroc Programs, Inc. and Delstar Gas Development Program No. 931, Ltd., filed a declaratory judgment action seeking to establish their rights in and to the Lightfoot lease against the Corbin J. Robertson III 1970 Trust, the Frances Christine Robertson Trust, and the William Keen Robertson 1975 Trust, successors-in-interest to the Lightfoot Land Company. While the litigation was pending, the defendants conveyed their interest in the Lightfoot lease to William "Bill" Poland and GasBusters Limited Partnership I. The defendants then moved the circuit court to dismiss the claims against them and substitute GasBusters and the Robertson Family in their stead. The motion was granted.

GasBusters and the Robertson Family each filed an answer and counterclaim against the plaintiffs asserting that the Lightfoot lease had terminated by its own terms. The Robertson Family then filed a third-party complaint against C. Lester Paul and several entities (collectively the Paul Entities) alleging that the Paul Entities produced and sold gas on the property from 1977 to 1986 without paying royalties to the Robertson Family, that the Lightfoot lease had terminated by its own terms in 1979, and that the Paul Entities wrongfully converted gas after the lease terminated. On May 15, 1996, the Robertson Family moved for summary judgment on its counterclaim and third-party complaint.

On September 13, 1996, Commissioner J. Thomas Hardin concluded that the Lightfoot lease had terminated by its own terms on July 17, 1980, and, as a result, recommended an award of $99,461.06 to the Robertson Family for unpaid royalties and the value of converted gas. On October 17, 1996, the circuit court adopted Commissioner Hardin's recommended findings of fact, conclusions of law, order and judgment. The appellants and the Robertson Family each filed motions to alter, amend or vacate the judgment. The court granted the motions and appointed a

---

1. After receiving a report from a special master commissioner and affording the parties time to object to it, the circuit court may, after conducting a hearing to consider any objections, adopt the report in whole or in part, reject it, receive further evidence, or recommit it to the commissioner with instructions. Ky. R. Civ.Proc. (CR) 53.06(2). The findings of a commissioner, to the extent that court adopts them, shall be considered as the findings of the court. CR 52.01.

new commissioner to make supplemental recommendations.

On April 6, 1998, Commissioner Thomas Smith determined that the Lightfoot lease had terminated on July 1, 1984, and that the Robertson Family was entitled to an award of $134,430.86 for unpaid royalties and the value of converted gas. On June 19, 1998, the circuit court adopted Commissioner Smith's supplemental recommendations. Appellants moved to alter, amend or vacate the order and judgment, but the motion was denied on July 10, 1998. This appeal followed.

■ On appeal, appellants argue that the Robertson Family lacks standing to seek a forfeiture of the lease and that the Lightfoot lease is still valid. In this vein, appellants first argue that the Robertson Family is precluded from suing for breach of the lease because it transferred its interest in the lease prior to filing its third-party complaint. Appellants' argument is without merit. When the Robertson Family transferred its interest in the lease, it specifically reserved in the closing agreement all of its rights for past-due royalties and claims for the conversion of any oil or gas. The Robertson Family's third-party complaint was filed to assert these reserved claims.

Second, the appellants argue that the Robertson Family is precluded from seeking forfeiture of the lease because it failed to give notice or make demand for due diligence prior to filing its third-party complaint. Commissioner Smith specifically found that the appellants did not receive any notice or demand for due diligence from the Robertson Family. However, he also concluded that notice was not required to be given in this instance.

■ In Kentucky, there are three distinct grounds pursuant to which an oil and gas lessee may lose his interest in a lease.[2] The first ground is forfeiture. "With respect to an oil and gas lease, the ground of forfeiture is the breach of an express or implied covenant, condition or obligation of the lease."[3] The second ground is abandonment, which is the intentional and actual relinquishment of the leased premises.[4] The third and final ground occurs when the lease terminates by its own terms. Where the primary term of an oil and gas lease has run and the lease provides for an extension for so long as oil or gas is produced in paying quantities, the lease will *ipso facto* terminate whenever production or development ceases for an unreasonable period of time.[5]

■ The requirement of giving notice prior to filing suit for cancellation is relevant only in conjunction with the first ground, forfeiture. Whenever an action is based on forfeiture for breach of express or implied obligations in a lease, the lessor must provide notice and demand due diligence prior to filing suit.[6] In actions where the lessor seeks cancellation of a lease on grounds of abandonment, notice is not required.[7]

**2.** *Wheeler and LeMaster Oil and Gas Co. v. Henley*, Ky., 398 S.W.2d 475 (1966).

**3.** *Cameron v. LeBow*, Ky., 338 S.W.2d 399, 406 (1960) (citations omitted).

**4.** *Fuqua v. Chester Oil Co.*, Ky., 246 S.W.2d 1007 (1952).

**5.** *Wheeler and LeMaster Oil and Gas Co., supra*, n. 2, at 476 (citing *Lamb v. Vansyckle*, 205 Ky. 597, 266 S.W. 253, 254 (1924)).

**6.** *Carrs Fork Corp. v. Kodak Min. Co.*, Ky., 809 S.W.2d 699, 702 (1991).

**7.** *B & B Oil Co. v. Lane*, Ky., 249 S.W.2d 705, 706 (1952)(citing *American Wholesale Corp. v. F. & S. Oil and Gas Co.*, 242 Ky. 356, 46 S.W.2d 498 (1932)).

If [the lessee] has abandoned [the lease], he knows that fact and is entitled to no notice; while if lessee is only remiss or dilatory in the manner in which he is developing or operating the property, he is entitled to notice that he must improve his operations, and should he fail to heed the notice, suit will be brought to cancel the lease.[8]

After reviewing the Robertson Family's counterclaim, third-party complaint and motion for summary judgment, it is clear that it has not alleged forfeiture or abandonment, but rather, has proceeded under the contention that the Lightfoot lease terminated by its own terms. Thus, we agree with the commissioner's finding that no notice was required.

■ Turning to the Lightfoot lease itself, appellants next argue that the commissioner erred in interpreting the term "marketed" in the habendum clause. Because we are well beyond the definite term of the lease, our query into the lease's current validity requires us to focus on the habendum clause and determine whether gas continues to be "marketed" from the property. The habendum clause provides: "The life of this lease shall extend as long as oil or gas is marketed from the property hereby leased." The Commissioner interpreted the term "marketed" as requiring the production and sale of gas from the property in paying quantities. While we agree with the commissioner's interpretation, we note that the actual consummation of a sale is not necessarily the determinating factor of whether the lessee has marketed the gas.

■ In oil and gas leases, the duty to market requires the lessee to use due diligence and good faith to market the gas.[9] To determine whether the lessee exercised due diligence in marketing the oil or gas, courts should take into account all of the circumstances, such as

the absence of a market and the diligence of a lessee in seeking a market, the failure of the lessor to make a demand, the acceptance by a lessor of other benefits under the lease, whether it was necessary to make abnormal expenditures to market the product, and whether the delay was to gain better marketing terms.[10]

■ The Robertson Family has alleged that the Lightfoot lease terminated because the Paul Entities failed to market gas from the property as required by the habendum clause of the lease. In order for the Lightfoot lease to *ipso facto* terminate, the lessee must cease marketing oil or gas from the property for an unreasonable time. What constitutes an unreasonable time depends on the facts and circumstances in each case.[11]

In *Wheeler and LeMaster Oil and Gas Co. v. Henley*,[12] the issue facing Kentucky's highest court, was whether a two year, four month delay in production was sufficiently unreasonable to terminate a lease that contained a habendum clause which provided that the lease would remain in force as long as oil or gas was produced from the property. The Court took notice of the fact that the lessor had not received any royalty payments in ten

8. *Id.*

9. *See generally* 58 CJS *Mines and Minerals* § 266 (1998).

10. *Davis v. Cramer,* 837 P.2d 218, 222 (Colo. Ct.App.1992) (citing 5 E. Kuntz, *Oil & Gas* § 60.3 (D. Dunn ed.1989)).

11. *Wheeler and LeMaster Oil and Gas Co., supra,* n. 2.

12. *Id.*

years, that it was no longer profitable to operate the lease using primary recovery efforts, and that the lessee had refused two offers to have the property "water flooded." In finding that the delay was unreasonable, the Court recognized "a strong policy against a lessee holding land for an unreasonable length of time simply for speculative purposes, or because of a lack of due diligence, where the lessor's only revenue results from royalty payments received from continued production." [13]

Gas was produced from the property and sold to Kentucky West Virginia Gas Company pursuant to a contract executed in March 1957. The Paul Entities, which purchased one-fourth of the lessee's interest in 1977 and the remaining three-quarters in 1979, continued selling gas to Kentucky West Virginia Gas Company until January 1979. From January 1979 to April 1981, the Paul Entities did not market or sell any gas from the property. During this time, the Robertson Family apparently sent a letter to the Paul Entities requesting a release from the Lightfoot lease for lack of production. However, for reasons not apparent from the record, the Robertson Family never followed up on the letter and did not receive a release. Then, in April 1981, the Paul Entities began to sell gas from the property to Colombia Gas Transmission Corporation. Even though the Paul Entities sold gas to Colombia Gas Transmission Corporation from April 1981 until July 1984, the Robertson Family never received royalty payments. In July 1984, all commercial sales of gas ceased. For the next ten years that the Robertson Family held the lessor's interest in the Lightfoot lease, the only gas produced from the property went to various farm taps set up by the Paul Entities. These farm taps included two taps for the Paul Entities' office and garage and several taps set up for third parties as compensation for the granting of easements for transmission lines. Such production is not, as appellants suggest, considered production in paying quantities. Under these circumstances, the commissioner did not err in finding that the Lightfoot lease terminated by its own terms.

Appellants next argue that the circuit court erred in adopting the commissioner's recommendations regarding the calculation of damages owed the Robertson Family. The commissioner found that the Robertson Family was entitled to unpaid royalties owed pursuant to the Lightfoot lease for gas sold prior to July 1984, and for the full value of gas converted after July 1984. As for the commissioner's calculations, he simply adopted the damage calculations submitted by the Robertson Family. While we agree with the commissioner's finding as to the elements of damages, we take issue with the actual calculations.

■■■ First, under the summary of damages and interest, it is clear that the Robertson Family incorrectly included within its calculations the value of gas used by the Paul Entities for two farm taps connected to its office and garage. As the appellants point out, the commissioner specifically found that the Lightfoot lease granted the Paul Entities the right to utilize free gas for the actual operation in development of the property. Therefore, the Robertson Family should not be compensated for past royalties or for the value of gas used by the Paul Entities in these two taps during the life of the lease. However, the Paul Entities are liable to the Robertson Family for gas used in the two farm taps after the lease terminated in July 1984. Second, with regard to the remaining farm taps, the Robertson Fami-

13. *Id.* at 477.

ly should be awarded royalties for gas used prior to July 1, 1984, and for the full value of the gas after July 1, 1984. Finally, we agree with the appellants that they were innocent rather than willful trespassers on the property after the lease terminated by its own terms. As such, damages for the conversion of gas should be calculated according to the principles set forth in *Swiss Oil Corp. v. Hupp.*[14]

For these reasons, we affirm the judgment in part, reverse in part and remand this case to Lawrence Circuit Court with instructions to recalculate damages owed the Robertson Family.

ALL CONCUR.

---

**14.** 253 Ky. 552, 69 S.W.2d 1037 (1934).